UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SARA MEDICI,

    Plaintiff,

v.

JP MORGAN CHASE BANK, N.A., a
nationally chartered bank and successor
in interest to Washington Mutual Bank;
NORTHWEST TRUSTEE SERVICES,
INC., a Washington business corporation;
BANK OF AMERICA N.A., a nationally
chartered bank, successor by merger to
LaSalle Bank N.A., as Trustee for
WAMU 2004-AR14; and JOHN DOE 1,
any other entity being successor in interest to
Washington Mutual Bank,

    Defendants.

Case No.: 3:11-cv-00959-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Plaintiff brings this action for injunctive relief, negligence, negligence per se for violation of Oregon Revised Statute (ORS) 86.753(2), gross negligence, and breach of contract in connection to the wrongful foreclosure of plaintiff's home after she reinstated her loan and the delay in reinstating her loan. On April 5, 2013, defendants filed a Motion for Summary Judgment [61]. On January 9, 2014, the court heard oral argument on the motion. For the following reasons, defendants' Motion is granted in part and denied in part.

1 - OPINION AND ORDER

## FACTUAL BACKGROUND

In October 2004, Sara Medici (plaintiff) obtained a refinance first residential mortgage loan from Washington Mutual Bank in the amount of $687,000. The loan was secured by a Deed of Trust encumbering plaintiff's residence, 7205 SW Dogwood Place, Portland, Oregon 97225 (Residence). The loan was subsequently transferred to defendant JP Morgan Chase Bank, N.A. (Chase) as successor in interest to Washington Mutual Bank. Northwest Trustee Services, Inc. (NWTS) is the servicer of the loan.[1]

Due to problems in her restaurant business, plaintiff became delinquent on her loan payments in September 2008. During this time, plaintiff was in frequent communication with Chase in an attempt to obtain a loan modification. Chase advised plaintiff that she might be eligible for a permanent loan modification, but needed to keep her loan in delinquent status to maintain her eligibility. Through a document dated January 27, 2009, plaintiff was notified that the property was scheduled for foreclosure on June 2, 2009.

By May 2009, plaintiff was behind on her loan payments by $27,542.94. On May 29, 2009, plaintiff submitted a reinstatement payment in the amount of $27,542.94 as directed by Chase representatives. The payment cured plaintiff's default and reinstated the loan in good standing. Plaintiff also timely made her June 2009 payment. On June 10, 2009, Chase sent plaintiff a letter explaining that her loan had been reinstated in good standing, and that the loan modification application had been cancelled.

During July and August of 2009, Chase notified plaintiff that there was some internal problem with the status of her loan. Chase representatives flagged plaintiff's loan as in need of

---

[1] On April 30, 2012, plaintiff entered into a stipulation with NWTS in which the they agree that NWTS is not a defendant.

2 - OPINION AND ORDER

additional review on two occasions. Nevertheless, on August 14, 2009, NWTS conducted a foreclosure sale of the Residence. Defendant Bank of America purchased the Residence for the amount of plaintiff's debt. According to plaintiff, there were three requested escalations for internal management review after the sale, but a Trustee's Deed was recorded on August 27, 2009, transferring the Residence to Bank of America.

Plaintiff learned of the foreclosure sale on August 19, 2009, when she discovered a notice on the front door of the Residence. Plaintiff immediately retained counsel, who immediately contacted NWTS. NWTS immediately ceased all eviction activity. Plaintiff's residence on the property has never been interrupted and she continues to reside there.

In 2009 and 2010, plaintiff's counsel sent several letters to Chase, which explained plaintiff's legal theories and offered resolutions that were acceptable to plaintiff. Chase did not process plaintiff's loan modification request and it offered new loan terms that were not acceptable to plaintiff.

Despite living at the Residence, plaintiff has not made any mortgage or rental payment since June 2009. Plaintiff has not paid any property tax since 2009. She did not maintain property insurance from August 2009 through July 2011, and she has not paid bank fees since the foreclosure date. Plaintiff explains that she could not make loan payments because her loan no longer existed. Similarly, plaintiff explains that her property insurance was canceled when she no longer owned the Residence. As evidenced by the original Complaint, plaintiff initially resisted Chase's attempts to rescind the foreclosure and reinstate the loan on its prior terms. After failed attempts to negotiate a resolution, NWTS recorded a Correction of Error Deed on February 25, 2011, rescinding the foreclosure sale and the Trustee's Deed without notifying plaintiff. Plaintiff initiated this action on August 10, 2011.

3 - OPINION AND ORDER

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

4 - OPINION AND ORDER

## DISCUSSION

### A. PLAINTIFF'S SUBSTANTIVE CLAIMS

Plaintiff sets forth claims of (1) negligence, (2) breach of contract, and (3) injunctive relief against defendants.

#### 1. Negligence Claims

Plaintiff asserts three negligence claims: common law negligence, gross negligence, and statutory negligence for violation of ORS 86.753(2). In general, all counts of negligence stem from defendants' foreclosure sale during a period in which plaintiff was not in default and defendants' failure to timely correct that wrongful foreclosure.

a. Common Law Negligence and Gross Negligence Claims.

Plaintiff's negligence claims do not seek recovery for any personal injury or property loss. Instead, the negligence claims seek only economic damages. Defendants argue that, under Oregon law, a plaintiff seeking tort recovery for purely economic loss must go beyond proving the standard elements of negligence. The plaintiff must also establish that defendants owed plaintiff a heightened duty of care. Therefore, defendants argue, plaintiff's common law and gross negligence claims fail as a matter of law because defendants did not owe plaintiff a heightened duty of care.

Under Oregon law, one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property. *Hale v. Groce*, 744 P.2d 1289, 1290 (1987). However, a plaintiff may recover in such circumstances if the plaintiff showed "'some sort of duty outside the common law of negligence.'" *Harris v. Suniga*, 180 P.3d 12, 15-16 (2008) (quoting *Hale*, 744 P.2d at 1290). Such a duty arises in relationships that impose obligations "beyond the common law duty to exercise reasonable care to prevent foreseeable

5 - OPINION AND ORDER

harm." *Onita Pacific Corp. v. Trustees of Bronson*, 843 P.2d 890, 896 (1992). Generally, Oregon courts describe these relationships as falling into several categories: "those between professionals such as lawyers, physicians, architects and engineers and their clients; those between principals such as brokers and their agents; those between trustees and beneficiaries; and, in some instances, those between insurers and their insureds." *Jones v. Emerald Pacific Homes, Inc*, 71 P.3d 574, 578 (Or. Ct. App. 2003) (citing *Conway v. Pacific University*, 924 P.2d 818, 823 (1996)).

Oregon courts have held that a special relationship is defined by four traits: (1) one party relinquishes control over matters, usually financial, to the other party; (2) the controlling party is authorized to exercise independent judgment; (3) the relinquishing party relies on the controlling party to further its interests; and (4) the relationship resembles a relationship in which the law imposes a duty on the parties to act reasonably. *Bell v. Public Emps. Ret. Bd.*, 246 P.3d 319, 326 (Or. Ct. App. 2010). In the present case, plaintiff has relinquished no control to defendants and defendants are not authorized to exercise independent judgment on plaintiff's behalf, particularly in regards to the foreclosure proceedings that form the basis of plaintiff's claims.

Plaintiff relies on *Harper v. Interstate Brewery Co.*, 120 P.2d 757 (1942), to suggest that creditors do owe a heightened duty to borrowers. However, Oregon courts have found that the relationship between creditor and borrower is not a special relationship that imposes a heightened duty of care. *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 891 P.2d 639, 645-46 (1995); *Rapacki v. Chase Home Finance LLC*, No. 3:11-cv-185-HZ, 2012 WL 1340119, *3 (D. Or. Apr. 17, 2012). In fact, plaintiff's position has been expressly rejected. In *In re Cardinal Enterprises*, 68 B.R. 460 (9th Cir. B.A.P. 1986), the Ninth Circuit Bankruptcy Appeals Panel, explained that subsequent Oregon case law has limited *Harper* to its facts. (citing *Cascade Steel Fabricators,*

6 - OPINION AND ORDER

*Inc. v. Citizens Bank of Oregon*, 612 P.2d 332 (1980). Similarly, this court refused to extend *Harper* in *Rapacki v. Chase Home Finance LLC,* 797 F. Supp. 2d 1085, 1090-91 (D. Or. 2011), holding that Oregon does not recognize a wrongful foreclosure tort claim. *See also Meza-Lopez v. Deutsche Bank Nat. Trust Co.*, No. 3:11-cv-00891-HU, 2012 WL 1081454 (D.Or. Feb. 13, 2012). Therefore, plaintiff's citation to *Harper* does not support her claims for common law negligence and gross negligence, and those claims fail as a matter of law. Summary Judgment is granted in defendants' favor on plaintiff's common law negligence and gross negligence claims.

b.   Statutory Negligence Claim

A heightened duty can also arise from statute. *Bell,* 247 P.3d at 323. "Whether a statute creates a duty, the breach of which could be tortious to the one harmed as a result of the breach, is determined by discerning what the legislature intended." *Id.* (citations omitted). Thus, to state a negligence claim for economic losses based on statute, a plaintiff must establish that the statute's authors intended that breach of the duty imposed by statute would give rise to tort liability. *Id.* at 323-24 (citation omitted).

While plaintiff does not substantively address this claim in her briefing, her Second Amended Complaint asserts that ORS 86.753 imposes a heightened duty of care on defendants and serves as a basis for her negligence claim. This court already rejected this argument as it pertained to NWTS in its March 16, 2012 Order and Opinion [32]. ORS 86.753(2) provides: "After cure of default under subsection (1) of this section, all proceedings under ORS 86.740 to 86.755 shall be dismissed by the trustee, and the obligation and trust deed shall be reinstated and shall remain in force the same as if no acceleration had occurred." Plaintiff fails to point to any aspect of the statute that evinces the Oregon legislature's intent to impose tort liability. In its March 16, 2012 Opinion and Order, the court explained that it found no evidence that the

7 - OPINION AND ORDER

legislature intended this statute to impose tort liability, and it is not necessary to repeat that analysis here.

Moreover, ORS 86.740 does not apply to the remaining defendants in this case. The statute is applicable to the actions of trustees, not lenders and loan servicers, such as defendants Chase and Bank of America. Therefore, ORS 86.740 does not impose a heightened duty of care on defendants and summary judgment is granted in defendants' favor on plaintiff's statutory negligence claim.

### 2. Breach of Contract Claim

Plaintiff's breach of contract claim is not substantively different from the negligence claim. Plaintiff asserts that defendants breached the terms of the loan agreement by conducting the foreclosure sale after plaintiff cured her default.

Defendants argue that plaintiff's breach of contract claim is moot. Defendants do not dispute that the loan agreement between plaintiff and Chase was breached when the Residence was foreclosed; however, defendants argue that plaintiff was made whole by the time she filed her Complaint. Specifically, defendants argue that plaintiff was never removed from the Residence, and before the Complaint was filed, NWTS recorded a Correction of Error, rescinding the Trustee's Deed and restoring title to plaintiff.

Plaintiff offers little counter-argument on this point, but asserts that she has not yet been made whole. In support of her argument, plaintiff cites ORS 20.096, which provides that:

> In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.

8 - OPINION AND ORDER

The loan agreement authorizes Chase to recover attorney fees incurred to enforce its rights under the agreement. Therefore, plaintiff may be entitled to attorney fees for the period before 2010 during which she enforced her rights under the loan agreement. Plaintiff should have the opportunity to establish such fees at trial. Accordingly, there remain questions of fact related to plaintiff's breach of contract claim.

### 3. Request for Injunctive Relief

Plaintiff's request for injunctive relief requests that the court prevent defendants from initiating a new foreclosure action until this matter is resolved. Plaintiff fears that defendants will rely on the Correction of Error to reinitiate foreclosure proceedings. Defendants argue that there is no pending or imminent foreclosure; therefore, such relief is unwarranted. Defendants contend that the relief is unwarranted because it does not address a present claim or controversy - only a potential future injury.

Article III of the United States Constitution limits this court's jurisdiction to cases or controversies. *Pitts v. Terrible Herbst, Inc.* 653 F.3d 1081, 1086 (9th Cir. 2011) (citing U.S. Const. art. III, §2, cl. 1). On March 16, 2012, this court entered an Opinion and Order dismissing all claims against defendant NWTS. Op. and Order [32]. At that point in the proceedings, defendant NWTS's Motion to Dismiss was based on plaintiff's First Amended Complaint, which requested an injunction to prevent NWTS from unilaterally rescinding the Trustee's Deed and reinstating the loan. Because the Trustee's Deed was already rescinded and the loan already reinstated, the court held that the claim was moot. In so doing, the court also found that "there is no reason to believe that plaintiff will be evicted based on the Trustee's Deed." Op. and Order [32] at 7. The court found that plaintiff's fears of future foreclosure proceedings were speculative and would not be based on the same conduct alleged in this litigation. *Id.* (citing *Sakugawa v.*

9 - OPINION AND ORDER

*Mortgage Electronic Registration Systems, Inc.*, No. 10-00028 JMS/MK, 2011 WL 776051, *5-6 (D. Haw. Feb. 25, 2011)).

The facts, as they pertain to the remaining defendants, do not differ from those upon which the court based its March 16, 2012 Opinion and Order. Because there is no pending foreclosure proceedings, plaintiff's request for injunctive relief does not pertain to a present case or controversy. Therefore, plaintiff's request for injunctive relief is not ripe and this court lacks jurisdiction to review it.

### B. DAMAGES

In her Second Amended Complaint, plaintiff alleges that she has suffered several forms of economic damages: (1) a loss of equity in her home; (2) a loss of net after-tax income, due to loss of the benefit of state and federal tax deductions; (3) any other fees and charges accruing since the foreclosure less any equitable attribution to plaintiff for fair market rental cost of the Residence; and (4) attorney fees and costs. Defendants set forth several arguments alleging that plaintiff has not incurred any actual economic loss to support a claim for compensatory damages.

#### 1. Loss of Equity

Plaintiff claims that the wrongful foreclosure caused her to suffer a loss of at least $128,577 of equity in her home, because its value declined during the period that defendants' infringed on her right in the property. In so doing plaintiff explains that the fair market value of the Residence was $820,730 as of July 1, 2009 and had fallen to $736,570 by July 1, 2011. Plaintiff claims that she could have sold the Residence at the time of the foreclosure, paid off the loan, and have proceeds remaining.

However, in her original Complaint, plaintiff prayed that this court enter an injunction that prohibits defendants from "unilaterally rescinding the Trustee's Deed and reinstating the

10 - OPINION AND ORDER

loan, either retroactively or going forward on its prior terms, in contradiction to the accomplished foreclosure by the Defendants." Compl. [1] at ¶ 51. In other words, plaintiff attempted to prevent defendants from reinstating the loan, and now plaintiff seeks damages resulting from defendants' delay in completing the same action. Plaintiff should not be allowed to cry foul because defendants took the very action that she demanded. Essentially, in preventing the loan's reinstatement, plaintiff has waived her claim for lost equity in the Residence. Additionally, plaintiff has not demonstrated that she had any intention to sell the Residence. If she had intended to sell it, plaintiff could have simply accepted a loan reinstatement from defendants and sold the Residence rather than initiating negotiations regarding the terms of that reinstatement. Therefore, plaintiff has suffered no loss of equity.

### 2.     Loss of Net After-Tax Income

In her Second Amended Complaint, plaintiff claims that she suffered a loss of net after-tax income, due to the loss of the benefit of state and federal tax deductions for interest expense and property taxes on the Residence, in the amount of approximately $10,000. Second Am. Compl. [33] at ¶ 26. Defendant asserts that plaintiff has suffered no such loss.

After defendants have satisfied the initial burden of identifying a portion of the record that demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp.*, 477 U.S. at 322-24. In the present case, plaintiff does not even mention her alleged loss of net after-tax income in her Memorandum in Opposition to Defendants' Motion for Summary Judgment. She specifically states,

> Plaintiff's economic damages include her attorney fees spent to help her enforce her contract rights prior to this action, the loss of her equity that was directly

11 - OPINION AND ORDER

> caused by Chase abusing its power of sale, and the liability Chase claims against Plaintiff for all the debt obligation it made retroactively past due and owing in the extended time period of its willful misconduct or at least gross negligence.

Pls.' Mem. in Opp'n to Def.'s Mot. for Sum. J. [73] at p. 17-18. It appears as though plaintiff has abandoned this argument, and, at the very least, she has failed to produce any evidence that demonstrates that there is an issue of fact remaining. Therefore, plaintiff has failed to carry her burden and summary judgment on the net after-tax income shall be granted in defendants' favor.

### 3. Fees and Charges

Plaintiff argues that her damages should include the sum of mortgage payments, property taxes, property insurance premiums, and any other fees and charges that Chase has accrued since the foreclosure less equitable attribution to plaintiff for the fair market rental cost of the Residence. In other words, plaintiff requests that the court eliminate her potential liability to Chase for living in the Residence rent-free since the wrongful foreclosure.

This court has jurisdiction to determine actual cases and controversies. To take action on a claim, the court must identify "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *United States v. Antelope*, 395 F.3d 1128, 1132 (9th Cir. 2005) (quotation omitted). At this point in time, plaintiff has not suffered the payment of any fees or charges. In stark contrast, plaintiff has benefitted from living at the Residence without paying a single mortgage payment, tax payment, or insurance payment since 2009. Currently, her payment of such fees at some time in the future is speculative, as defendant Chase failed to assert any counterclaim. Thus, plaintiff's request for fees and charges is not ripe and the court lacks jurisdiction to review it.

///

///

### 4. Attorney Fees and Costs

As discussed above, plaintiff was forced to pay attorney fees incurred to enforce her rights under the loan agreement. In their briefings, defendants do not challenge plaintiff's right to seek attorney fees, and plaintiff is entitled to them pursuant to ORS 20.096, as discussed above. Therefore, plaintiff should be allowed to establish damages resulting from attorney fees incurred while enforcing her rights under the loan agreement in 2009.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [61] is GRANTED in part and DENIED in part. The Motion is granted as to plaintiff's negligence claims, request for injunctive relief, loss of equity damages, loss of net after-tax income damages, and fees and charges damages. The Motion is denied as to plaintiff's breach of contract claim and attorney fee damages.

IT IS SO ORDERED.

DATED this 15 day of January, 2014.

Ancer L. Haggerty
United States District Judge